## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KARL RICHARDS,** on behalf of himself and all others similarly situated,<br><br>                         Plaintiff,<br><br>v.<br><br>**NEXAR, INC.,**<br><br>                         Defendant. | **CASE NO.:   25-8211**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Karl Richards ("Plaintiff") brings this Class Action Complaint against Defendant Nexar, Inc. ("Nexar" or "Defendant") individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by his attorneys, as follows:

### NATURE OF THE ACTION

1.      Nexar is a dash cam company that promotes its products as "virtual CCTV cameras" and offers automatic cloud uploads of critical incidents, AI-driven insights, and real-time road alerts. This action seeks damages for Plaintiffs and other consumers who were victims of Defendant's fraudulent and misleading representations concerning the dash cam's security and privacy features.

2.      Nexar monetizes users' data and recordings by repackaging them into various products. One of those is the company's CityStream map which uses recent and blurred

images taken by Nexar dash cams, superimposes them on a publicly available map, and annotates things such as yield or speed limit signs, damaged roads, and other hazards.

3.      According to a report from 404 Media, in September 2025, a hacker accessed a database of video recordings taken from Nexar-branded cameras, which are built to be placed in drivers' cars.

4.      In a clip provided by the hacker to 404 Media, a Nexar camera is faced towards the inside of the car, capturing a rideshare driver picking up passengers. In these videos, the riders' faces are clearly visible.

5.      The hacker had found all these videos on an improperly secured Amazon Web Services (AWS) bucket. An AWS bucket acts as a virtual file folder in the cloud where users can store various types of data and the hacker found more than 130 TB worth of data.

6.      According to the hacker, every Nexar dash cam is equipped with a "key" to Nexar's database.  The key allows users to upload their own camera's data to the database. However, the key also allows users to access the data uploaded from other users' camera.

7.      Nexar makes strong promises about how it will protect users' privacy.  Indeed, in its privacy policy, Nexar boldly proclaims that "[w]hile privacy laws may vary between jurisdictions, Nexar is committed to protecting personal data in accordance with this Privacy Policy, customary industry standards, and such appropriate lawful mechanisms and contractual terms requiring adequate data protection, regardless of any lesser legal requirements that may apply in the jurisdiction to which such data is transferred."[1]  Obviously, giving any Nexar camera user effectively *carte blanche* access to all other Nexar users' video

---

[1] https://www.getnexar.com/privacy/

files is not compliant with any "customary industry standard," nor is it "adequate data protection."

8.    Nexar further promises that, for its training data, "[d]espite the inclusion of non-anonymized content, we uphold the highest standards of data security and privacy: Access to training data is strictly confined to the team members directly involved in the AI development process; We employ advanced encryption and stringent access controls to safeguard against unauthorized access to the data; The training data is retained exclusively for a limited period of time for the training purposes for which it was collected, ensuring it is not used beyond its intended scope; The training data closely mirrors the lifecycle of personal data. When a User decides to delete their rides or deactivate their account, we ensure that the corresponding training data is also deleted from our systems."[2]

9.    Nexar further represents that that it "anonymize[s] Camera-Generated Content gathered and shared among Users. The raw images may capture individuals, license plates, and other personal data recorded via the Camera (e.g., papers left on the dashboard, parking cards, etc.). To prevent the identification of individuals in such content, we make sure that all identifiable elements are anonymized. The anonymization is performed directly on the User's device, even before the information is sent to Nexar." [3]

10.    Finally, with respect to data security, Nexar promises that "We and our hosting services implement systems, applications and procedures to secure your personal data, to minimize the risks of theft, damage, loss of information, or unauthorized access or use of

---

[2] *Id.*
[3] *Id.*

information. These measures provide sound industry-standard security, confirmed also by Nexar's ISO/IEC 27001 and 27018 certifications."

11.     Purchasers of Nexar's cameras rely on such representations of anonymity when choosing to purchase Nexar's products.

12.     Plaintiff and consumers reasonably relied on Nexar's marketing and representations when purchasing the Camera products, which omitted that the cameras were not, in fact, secure, did not, in fact, protect users' privacy, and thus, did not abide by any industry standard. Plaintiff and other members of the Class thus did not receive the products that they were promised, *i.e.*, dash cam Cameras that protected personal data, did not share their data with any unauthorized third parties, that anonymized their collected data, and that secured the data collected by end-to-end encryption and safeguarded against unauthorized access. Accordingly, Plaintiff brings this class action on behalf of: (i) all individuals in the United States who purchased dash cam cameras, during the applicable statute of limitations period (the "Nationwide Class"); and (ii) all individuals in New York State who purchased dash cam cameras, during the applicable statute of limitations period (the "New York Class"), to recover restitution and damages, and for injunctive relief.

## **PARTIES**

13.     Plaintiff Karl Richards is a resident and citizen of New York who purchased and used a dash cam camera in his car.

14.     Defendant Nexar is a Delaware corporation, with its headquarters located at 135 W 41st Street, New York, New York 10036.

15.     Plaintiff reserves the right to amend this complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or

distributor of Defendants and/or the dash cam who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

<u>**JURISDICTION AND VENUE**</u>

16.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this Complaint allege questions of federal laws under the ECPA (18 U.S.C. § 2511, *et seq.*).

17.     This Court has general personal jurisdiction over Nexar because its principal place of business is located in this District.  In addition, Nexar has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including by marketing and selling dash cam cameras consumers in this Judicial District, by placing dash cam cameras into the stream of commerce directed at this Judicial District, and because Nexar purposely availed itself of the laws of the United States and the State of New York.

18.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because Defendant is headquartered in and resides in this District.

**FACTUAL ALLEGATIONS**

**A.     Background Information**

19.     Nexar markets, distributes, and sells its dash cams throughout the United States. Consumers can purchase these products online, either directly through Nexar or another online retailer. These dash cams are specifically marketed to capture every moment with features like accident detection and seamless app integration.

20.     In conjunction with the dash cams, Nexar also utilized Real-Time mapping software utilizing their CityStream Live software.

21.     According to Defendant, the CityStream System requires an opt-in by users in order for their dash cam data to be used for mapping purposes.  But even if users have opted in to allow their data to be utilized for mapping, they anticipate that their data is being protected within the firewalls set up by Defendant – the hacker proved otherwise as it notedly only took him two hours to hack into 130 Terabytes of Plaintiff and class members' data.

**B.     Purchasers of the Camera Products Rely On Defendants' Misrepresentations**

22.     Many users, including Plaintiff, selected Defendants' dash cam in reasonable reliance on Defendant's representations and omissions concerning privacy and security. Plaintiff and class members and would not have purchased Nexar's products, or would have paid less for them, had Defendant truthfully represented its privacy and security practices. Defendant knew that consumers relied on their statements concerning the privacy and security features of the dash cams as well as their CityStream Service.

**C.     Security Professionals Find That Nexar's Representations Are False**

23.     While consumers, including Plaintiffs, reasonably believed and relied upon Nexar's representations and omission concerning privacy and security, it was not until August 2025 that consumers discovered the data associated with their dash cams and their CityStream data was not in compliance with the ISO/IEC 27001[4] and 27018[5] certifications that Defendant boasts about in their Privacy Policy.

---

[4] The ISO 27001 standard, specifies the requirements for establishing, implementing, maintaining, and continually improving an Information Security Management System (ISMS). *See also* https://www.kiteworks.com/risk-compliance-glossary/iso-27000-standards/

[5] The ISO 27018 is an extension that focuses on specifically protection Personally Identifiable Information (PII) in public cloud environments. *See also* https://www.kiteworks.com/risk-compliance-glossary/iso-27000-standards/

24.    Despite having both these certifications, one which requires the constant maintenance and improvement of ISMS, a hacker was able to get into Nexar's cloud based system within 2 hours and collect 130 Terabytes of data.

25.    In September 2025, a hacker reached out to 404Media to blow the whistle on Defendant's lax privacy practices. In several images and videos captured by the hacker, people are clearly unaware that a third party may be watching or listening in. One of the images even shows a driver heading towards the entrance of CIA headquarters. Other images that are publicly available in the CityStream Service that Defendant publishes online, show drivers around sensitive Department of Defense locations.

26.    A recent podcast by 404 Media on Nexar further clarifies that despite Nexar's claims of anonymizing data, the AWS bucket accessed by the hacker contained unblurred and non-anonymized video imagery.

27.    Upon information and belief, this non-anonymized data comprises backup video data from Nexar dash cam users that does not strip out identifiable elements, despite Nexar's claims that "all identifiable elements are anonymized" and that the anonymization occurs "even before the information is sent to Nexar."

28.    Included in these images and videos that the hacker was easily able to access, the hacker also found a list of companies and agencies that may have interacted with Nexar's company data including, Apple, Microsoft, Amazon, Google, Pokemon Go creator Niantic, transportation companies Lyft and Waymo, and numerous AI and logistics focused companies.

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined classes:

> **National Class:** All persons in the United States who purchased dash cams or opted in to the CityStream Service, during the applicable statute of limitations.

> **New York Class:** All persons in New York who purchased dash cams or opted in to the CityStream Service, during the applicable statute of limitations.

The following are excluded from the classes: (1) government entities; (2) any Judge presiding over this action and members of his or her family; (3) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which a Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (4) persons who properly execute and file a timely request for exclusion from the Class; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (6) Plaintiff's counsel and Defendant's counsel; and (7) the legal representatives, successors, and assigns of any such excluded persons.

30.    The classes described in this complaint may be jointly referred to as the "Class" or "Classes" and members of the proposed classes may be jointly referred to as "Class members." Plaintiff reserves the right to amend or modify the Class definitions with greater specificity, further division into subclasses, or with limitation to particular issues as discovery and the orders of this Court warrant. In addition, the Court can define the Classes and create additional subclasses as may be necessary or desirable to adjudicate common issues and claims of the Class members if, based on discovery of additional facts, the need arises.

31.    Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making

final injunctive relief or corresponding declaratory relief and damages appropriate with respect to the Classes as a whole.

32.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

33.    The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, Class members number in the thousands. The precise number or identification of members of the Class is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

34.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

  a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the dash cams were deceptive;

  b) Whether Nexar's actions violate the consumer protection statutes invoked herein;

  c) Whether Nexar's marketing of their dash cams and CityStream Service was likely to deceive or mislead reasonable consumers;

  d) Whether Nexar's conduct constitutes violations of the laws and statutes asserted herein;

  e) Whether Nexar's conduct was knowing and/or negligent;

f) Whether Defendant was unjustly enriched at the expense of Plaintiff and Class members;

g) Whether Plaintiff and Class members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

h) Whether Plaintiff and the other Class members have been injured and the proper measure of their losses as a result of those injuries;

i) Whether Plaintiff and the Class members are entitled to injunctive, declaratory, or other equitable relief; and

j) Whether, as a result of Nexar's conduct, Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, or costs of suit.

35.    Nexar engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

36.    Plaintiff's claims are typical of the claims of the other Class members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Nexar in violation of law as complained of herein. Further, the damages of each Class member were caused directly by Nexar's wrongful conduct in violation of the law as alleged herein.

37.    Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the Class members that he seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and his counsel intend to prosecute this action

vigorously for the benefit of all Class members. Accordingly, the interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

38.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Nexar, so it would be impracticable for Class members to individually seek redress for Nexar's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I

**Violation of New York Deceptive Acts and Practices Law**
**New York General Business Law § 349**
**(On Behalf of Plaintiff Richards and the New York Class)**

39.    Plaintiff re-alleges and incorporates the allegations contained above as if fully set forth herein.

40.    Plaintiff and other members of the New York Class are "consumers" in accordance with New York General Business Law ("GBL") § 349.

41.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations about the protection and security measures that guard Nexar dash cam users' data.

42.    The foregoing deceptive acts and practices were directed at consumers.

43.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent and omit information concerning the security and privacy of the Nexar dash cams and the CityStream Service.

44.    Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the products if they had not been misled by Defendant's deceptive practices; and (b) they overpaid for Defendant's products on account of Defendant's misrepresentations and omissions.

45.    On behalf of himself and other members of the New York Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under Section 349 of the New York General Business Law.

### COUNT II
**Violation of New York Deceptive Acts and Practices Law**
**False Advertising**
**New York General Business Law § 350**
**(On Behalf of Plaintiff Richards and the New York Class)**

46.    Plaintiff re-alleges and incorporates the allegations contained above as if fully set forth herein.

47.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the GBL. Nexar committed deceptive acts and practices in the

State of New York by making the above alleged misrepresentations directed to consumers in New York.

48.    Nexar's statements and corresponding omissions concerning the security and privacy of the dash cams and the CityStream Service, alleged above, were advertisements in accordance with GBL § 350.

49.    Nexar's statements and corresponding omissions concerning the security and privacy of the dash cams and the CityStream Service, alleged above, were misleading in a material respect in violation of GBL § 350.

50.    At all relevant times, Nexar conducted trade and commerce in New York and elsewhere within the meaning of GBL § 349, and profited from the sale of the dash cams within New York.

51.    GBL § 350 allows a plaintiff to recover "actual damages or five hundred dollars, whichever is greater." *Id.* § 350-e.

52.    Plaintiff and members of the New York Subclass were injured by Defendant's misrepresentations because (a) they would not have purchased the products if they had not been misled by Defendant's misrepresentations; and (b) they overpaid for Defendant's products on account of Defendant's misrepresentations and omissions.

53.    As a direct and proximate result of Nexar's conduct, Plaintiff and other members of the Class have thus suffered damages.

54.    On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and

reasonable attorneys' fees and costs and any other just and proper relief available under Section 350 of the New York General Business Law.

**COUNT III**
**Unjust Enrichment**
**(In the Alternative and on Behalf of the National Class**
**and, alternatively, the New York Class,)**

55.    Plaintiff re-alleges and incorporates the allegations contained above as if fully set forth herein.

56.    Plaintiff and the other members of the Class conferred benefits on Nexar by purchasing the dash cams and opting in to the CityStream Service.

57.    Nexar has been unjustly enriched in retaining the revenues derived from the purchase of the dash cams by Plaintiff and the other members of the Class.

58.    Retention of those monies under these circumstances is unjust and inequitable because Nexar's marketing of the Products was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Class because they would have not purchased the dash cams or opt in to the CityStream Service if Nexar had disclosed that the dash cams and CityStream Service were not secure.

59.    Because Nexar's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Class is unjust and inequitable, Nexar must pay restitution to Plaintiff and the other members of the Class for their unjust enrichment, as ordered by the Court.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class members, prays for judgment and relief against Nexar as follows:

a)    For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Class described herein; and (ii) appointing

Plaintiff to serve as representative for the Class and Plaintiff's counsel to serve as Class Counsel;

b) For an order enjoining Nexar from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Nexar wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Nexar wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Nexar's wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this complaint so triable.

Dated: October 3, 2025                    Respectfully submitted,

*/s/ Philip L. Fraietta*
Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Matthew A. Girardi
50 Main Street, Ste. 475
White Plains, NY 10606
Telephone: (914)-874-0708
Facsimile: (914) 206-3656
E-Mail: pfraietta@bursor.com
          mgirardi@bursor.com

Gary M. Klinger (*PHV app. forthcoming*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

15

Telephone: 866.252.0878
gklinger@milberg.com

*Attorneys for Plaintiffs and the Putative Classes*